YOUNG v. THE STATE, on the relation of EWING.

Proceedings, by *habeas corpus*, to recover the custody of an infant child, alleged to be the child of the relator. The defendant returned to the writ: that some months previous the child was left at his door, in a basket, in a sick and almost dying condition; that he and his wife had nursed it into health; had become attached to it and desired to keep it; that they were suitable persons to have the custody of the child, while the relator was unfit to have such custody. The evidence, as to the identity of the child, was conflicting; but it was clearly shown that the relator was of abandoned habits, and unfit to have the care of the child; while the defendant was a suitable and proper person to have the charge of it.

*Held*, that considering the uncertain and conflicting testimony as to the identity of the child, in connection with the relative fitness of the parties to have the custody of it, the defendant should have been permitted to retain it.

*Friday,
January* 25.

APPEAL from an order, at Chambers, of the Judge of the *Vigo* Common Pleas.

HANNA, J.—*Ewing* and wife sued out a writ of *habeas corpus* against *Young*, averring in their petition, that he had in his custody, and illegally detained, *Samuel*, the infant child of said *Lydia*, wife of said *Ewing*.

*Young* returned to the writ: that, some eight or nine months previous, the child was left at his door, in a basket, in a sick and almost dying condition, abandoned by its parents, whoever they were; that he and his wife, having no children, had cared for it, nursed it into health, and become attached to it; were suitable persons, and desired to keep it; that

from said *Lydia's* denials, he did not think she was its mother; nor was she, or her present husband, who is not its father, fit persons to take charge of it.

The return was denied. Trial, and finding by the judge that the child was *Lydia's*, and the custody of it decreed to her. It is said that this finding and judgment ought not to be maintained, for three reasons: *First*, that the proof that it was the child of said *Lydia* is not sufficient; *second*, it was not shown that *Young* restrained it, there being no proof of a demand, &c.; *third*, the relators are not, and the said *Young* is, competent and fit to take charge of and rear said child.

There was the evidence of one, *Smith*, to the effect that some time in the fall of 1858 said *Lydia* came to his house, and because she had no place to go they took her, out of charity; that she then had with her a child which appeared to be some six weeks old, and that she sent him to one *Kilburn*, who she said was the father of the child, to tell him to come and take it away; that shortly afterward, about ten o'clock at night, some one came and took the child away in a common basket, after which she staid there about two weeks. She was kind to children. She made no objection to the child being taken away when *Kilburn* came after it. Did not know whether this was the child. The one taken away was in good health.

Mrs. *Smith* corroborated her husband, and added that *Lydia* was sick while at their house, and she loaned her a white gown, with a frill on and buttoned up before, for the child, and it was taken away with the child. She believed *Lydia* would take care of the child.

The defendant, being called on by the relator, testified that he found the child at his door on *October* 2, 1858, at twelve o'clock at night, in the basket then produced; that it was poor and sick, and remained so for three or four months—it was about four weeks old; that he had heard it was a bastard and one *Kilburn* was its father; that there was no such white gown as that spoken of by Mrs. *Smith;* that *Lydia* had been at his house once, and his wife asked if she was not the mother of the child, and she said she was not, and did not know who was; witness and wife have no children and

*Nov. Term, 1860.*

YOUNG
v.
THE STATE.

are much attached to this; that said *Lydia* is of bad reputation, and not fit to raise the child; that outside of the denials of said *Lydia* he believed the child to be hers.

Mrs. *Grubbs* testified that she saw the basket the child was sent away in, and believed the one produced to be the same; because it was so dirty, and had one handle broken: but could not say it was different from any other of same kind.

For the defense, Mrs. *McCoskey* testified, in corroboration of *Young*, as to the appearance and health of the child the morning after it was found, &c.; and that *Young* and his wife are respectable, well qualified and willing to take charge of the child, and in good circumstances.

Mrs. *Hedden* corroborated the last witness, and added, that there was no such gown on the child, or in the basket, as that described by Mrs. *Smith;* but there was a white gown without buttons.

Mrs. *McGee* corroborated the last witness.

Mr. *Hedden* testified that he was acquainted with *Young* and wife, and *Ewing* and wife; that the former are fit persons to take charge of, and rear, the child, and the latter are not; that the general character of said *Lydia* for chastity is bad; that within the last year and a half she appeared to be roaming around, without a home, and, in that time, boarded at one *Alexander's*, who kept a bawdy house.

*Dodson*, a police officer, testified that he had seen *Lydia* about the streets, and knew her to be considered of bad repute, and did not think her a suitable person to take charge of the child; that *Alexander* kept a bawdy house.

*Reed* testified that *Ewing* had no property nor home; was a day laborer on canal-boat, &c.; had kept house about two months after he was married, then quit and was gone away, witness did not know where; since he went away *Lydia* had staid, part of the time, at the house of a brother-in-law of witness, balance of the time did not know where she staid.

The evidence of the identity of the child is so meager, upon the part of the relators, and so much contradicted by that of the defendant, that we are of opinion it would be a very great stretch, of even our very liberal rule in favor of verdicts, &c., to sustain this finding. But passing over that as

an isolated point, and considering the third one, in connection with this view of the first, we are constrained to believe that the finding of the Court ought to have been different upon the whole case. The defendant ought to have been suffered to retain possession of the child; at least while the evidence shows the present relative position of the parties. 2 Kent. Com. 164; *Tarkington* v. *The State*, 1 Ind. 172; Bish. on Mar. and Div., § 643.

Nov. Term, 1860.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded, &c.

*B. B. Moffatt*, for appellant.

*E. E. Bassett* and *J. P. Baird*, for appellee.