## HUSSEY v. WHITING.

[No. 17,899.    Filed September 22, 1896.]

PARENT AND CHILD.—*Custody of Minor Child.*—*Welfare of Child.*— Ordinarily the parent is entitled to the custody of his minor child; but where the welfare of the child is retarded by the custody of the parent, an exception to the ordinary rule exists.

SAME.—*Parent's Oral Agreement as to Custody of Child.*—An oral agreement, express or implied, made by a parent, that another should have the custody of his child during infancy, will not preclude the parent reclaiming such child.

HABEAS CORPUS.—*Parent and Child.*—*Custody of Child.*—At the death of a child's mother, and pursuant to a request of such mother prior to her death, a child six years of age was taken by its grandparent and boarded and cared for until the child was thirteen years of age; such grandparent having given the child every care and comfort necessary to its welfare and was willing and anxious to continue so to do. The father of the child, who remained a widower, had little property, and was a traveling man with an income of $50.00 per month. The father took the child from its home with its grandparent and placed it with a relative who was kindly disposed to the child, but was not able financially to furnish the care and comforts provided by the grandparent ; the child at the time being in delicate health. The grandparent instituted *habeas corpus* proceedings and was by the trial court awarded the child. *Held,* That the trial court had committed no error.

APPEAL AND ERROR.—*Assignment of Error.*—An assignment that the court erred in overruling appellant's motions to modify judgment, where there were numerous motions to modify the judgment, severally filed and severally overruled, does not present an available error.

From the Gibson Circuit Court. *Affirmed.*

*Nebeker & Sims,* for appellant.

*A. H. Lindley,* for appellee.

HACKNEY, J.—This was a proceeding by *habeas corpus* for the custody of Ray Hussey, a little girl thirteen years of age, and was instituted by the appel-

lee, her maternal grandfather, against her father, the appellant. The decree of the lower court was in favor of the appellee, and the appellant submits the case to this court, by his appeal, upon the evidence.

It may be fairly said that, by a clear preponderance of the evidence either party entertains a deep affection for the child, and might reasonably be intrusted with her moral training. Since the death of her mother, some six years before the disagreement which resulted in this proceeding, she resided with her grandparents, who were possessed of a large, comfortable home, and lands of the value of $20,000.00 or more, and were willing and prepared to render every care and comfort necessary to the welfare of the child. During the period mentioned the appellant continued, and still is, a widower, with little means above his indebtedness, but with an average income of $50.00 per month from his business. Until he took the child from her grandparents he made his home with them, but his business, that of traveling salesman, required him to be absent from five to six days each week. He paid for his own boarding and supplied most of the material for clothing the child, but her boarding and care, and the making of her clothing were supplied by her grandparents. The appellant and the child took up their home with the appellee, pursuant to a request from Mrs. Hussey, while upon her deathbed, that they should have a home with, and that the child should be raised by the appellee and his wife. The parties differ as to the conversation at the time of this request, as to whether the appellant simply acquiesced in the request and the appellee's promise, or whether he declined to "give" the child to her grandparents. But there is no disagreement about the fact that the appellee and his wife cared for the child as a member of their family, and became greatly attached to her,

and that the appellant took her from them, not by
reason of any neglect or mistreatment of her, but be-
cause he and his mother-in-law, at times, disagreed
and had bitter words as to his own relations to the
household, and because he, without just cause,
thought that the child was becoming estranged from
him by the influence of her grandmother. When she
was taken from the appellee's home she was taken to
the home of the appellant's married sister, who lived
in the town of Princeton, where the appellee lived
also. The sister, Mrs. Eby, owned and lived in a house
of four rooms; her husband labored at $1.25 per day;
there were four members of her family and a boarder
five days in the week when the appellant and his
daughter took up their new abode with her. Mrs.
Eby was a kind-hearted woman, affectionate with chil-
dren and favorably disposed towards the little girl;
she performed all the duties of her household with-
out a servant, and, while her circumstances were not
the best, she was a fit woman to have the care and
moral training of the child. Mrs. Hussey had died of
consumption, and the child was delicate and evidently
predisposed to that disease.

Ordinarily the father is entitled to the custody of
his minor children. This was the rule of the common
law, and is affirmed by statute in this State, but,
where the welfare of the child is retarded by the
custody of the father, an exception to the ordinary rule
exists. The interests of society and the established
policy of the law make the welfare of the child para-
mount to the claims of a parent. *Jones* v. *Darnall*
103 Ind. 569, 53 Am. Rep. 545 ; *Sheers* v. *Stein,* 5 L.
R. A. 781, and note; *Joab* v. *Sheets.* 99 Ind. 328; Schouler
Dom. Rel., section 248; *United States* v. *Green,* 3 Mason
482; *Bryan* v. *Lyon,* 104 Ind. 227, 54 Am. Rep. 309.

The oral agreement, express or implied, that the ap-

pellee should have the custody of the child during her infancy would not preclude the appellant from reclaiming her custody. *Brooke* v. *Logan*, 112 Ind. 183; *Weir* v. *Marley*, 6 L. R. A. 672. The conclusion of the trial court, therefore, must have been reached upon the theory that the welfare of the child would be best promoted by remanding her to the custody of the appellee, and it remains for us to determine, upon the facts stated, whether that view of the case is supported.

Considering the delicacy of her health, the care and attention she requires on that account; the comforts of the spacious home of her grandparents; their relationship to, and affection for her; the understanding of her health, disposition and habits, acquired during the six years they have had the care of her, present a very strong claim in favor of their continued custody of her. The father's situation and business afford her no home with him, and, at best, from his standpoint, he can but supply her a home and its comforts by purchase, and with but little of his society. The home which he claims to be not less conducive to the welfare of the child than that from which he took her, is, no doubt, modest and reasonably comfortable under the circumstances, but certainly Mrs. Eby's obligations to her own immediate family, including her two children, would not afford her the time to bestow careful attention to the needs and wants of the child, and the crowded condition of her home of four rooms would certainly not be so conducive to the health of the child as that of her grandparents.

The conclusion of the trial court was not a mere discrimination between the luxuries of wealth on the one side and the modest comforts of an ordinary home on the other; nor was it a simple denial of the right of a father to have the care, custody, and training of

his minor child. It was a recognition of the fact that a child requiring unusual care could probably not receive it and that her father sought to remove her, not to his own custody, but to that of another, whose situation in life was not so conducive to the health and general welfare of the child as with her grandparents.

The decree of the circuit court is criticised by counsel because of its having provided that the appellant should, "at proper times," be permitted to visit his child, without defining the phrase "proper times." The criticism, we presume, is made upon the assignment of error that "the court erred in overruling the appellant's motions to modify the judgment." There were numerous motions to modify the judgment, severally filed, and severally overruled, some of which were properly overruled, and it is not even claimed in argument that all were improperly overruled. There is, therefore, no available error.

The judgment is affirmed.