## KEESLING v. KEESLING.

[No. 6,222. Filed October 13, 1908.]

1. APPEAL.—*Weighing Evidence.*—The Appellate Court will not weigh conflicting oral evidence. p. 362.

2. PARENT AND CHILD.—*Custody.*—*Divorce.*—*Subsequent Orders.*— Under a petition by the divorced husband for the custody of his child, the custody of which had been given, in the decree of divorce, to the divorced wife, the court may award the custody of such child to such husband's father, the welfare of the child being paramount. p. 363.

3. DIVORCE.—*Decree.*—*Subsequent Modification.*—*Custody of Child.* —The court granting a divorce has the continuing duty, upon a proper petition, to see that the child of such divorced persons is properly cared for, such child being in a sense the ward of the court. p. 363.

From Henry Circuit Court; *John M. Morris*, Judge.

Petition by Richard Keesling against Harriet Keesling. From a decree for petitioner, defendant appeals. *Affirmed.*

*Zell C. Swain* and *William A. Brown,* for appellant.

*Franklin McCray* and *A. R. Hovey,* for appellee.

HADLEY, J.—In the Henry Circuit Court, on May 24, 1905, appellant and appellee were divorced, and the custody of their infant daughter was given to appellant, the mother, with the right of visitation, under certain limitations, in appellee, the father. On November 28, 1905, appellee filed his petition praying for a modification of such order so as to give the custody of said child to him, averring that he had a good and suitable home for said child, and that appellant had no such home, but made her home with her mother and stepfather; that the moral surroundings of the home of appellant were bad, that said child was being taught to hate and despise appellee; that appellant and members of the family were in the habit of cursing and swearing, and using vulgar, profane and vile language in the presence of said child; that said child was kept in an unclean and filthy condition; that the moral character of appellant was bad, and stating specific acts of immorality committed since the original decree. Upon this petition trial was had, a large number of witnesses examined and the testimony presented to the court, all of which was oral, and a great deal of which was directly conflicting. On December 30, the court rendered its decision, modifying its decree as to the custody of said child, and awarding said child to David Keesling, the father of appellee and grandfather of said child, charging him with the maintenance, education and care of said child, and granting to said appellant the right of visitation under certain limitations. From this order of the court appellant takes her appeal.

It is urged by appellant that, since this cause was triable exclusively by the court, under section eight of the

1.  act of 1903 (Acts 1903, p. 338, §698 Burns 1908), this court should review the evidence and render such judgment as it might consider to be just and right. Since the evidence in this case was wholly by parol, and in most

instances directly conflicting, it comes within the rules laid down in *Parkison* v. *Thompson* (1905), 164 Ind. 609, and *Hudelson* v. *Hudelson* (1905), 164 Ind. 694. The reasoning of those cases is peculiarly applicable to this case. Here it was a question for the court to determine what was best for the child, and in determining this question the apparent conduct and demeanor of the parties seeking the custody of said child would necessarily have a very influential bearing upon the determination of such question.

It was charged in the petition that the child was kept in an unclean condition, and that its surroundings were bad. The appearance of the people who had the care of the child might prove to the court this allegation beyond question, without a word of oral testimony. We therefore, under the rules of the cases cited, will not weigh the evidence. We have examined the record, and find that there was sufficient testimony introduced by appellee, if true or believed by the court, to show that the surroundings of the child, while in its mother's custody, were not such as would be conducive to its best interests.

It is also urged that, since the petition to modify made no mention of David Keesling, but requested that the decree be modified to the extent of giving appellee the custody

2. of said child, the court erred in awarding the custody to David Keesling, a stranger to the record. It is a settled rule in this State that the welfare of the child is paramount to the claims of either parent, and the order of the court should in all such cases be made with regard alone to the best interests of the child. *Schleuter* v. *Canatsy* (1897), 148 Ind. 384; *Jones* v. *Darnall* (1885), 103 Ind. 569, 53 Am. Rep. 545; *Stone* v. *Stone* (1902), 158 Ind. 628.

When appellant and appellee were divorced their child became, in a sense, a ward of the court, and when appellee filed his petition to modify the order previously made,

3. and set up the facts showing that the child was not being cared for and reared as it should be, he re-

opened the case and brought the ward into court. The court then had the power to go fully into the question, and could, and no doubt did, make careful investigation and consideration. of the claims of the different parties, as well as their ability and fitness to give the child the attention and rearing that would be conducive to its best interests. In the case of *Stone* v. *Stone, supra,* the court well says: "Since the organization of our state government it has been the established policy of the law to regard the minor children of divorced parents as wards of the court in the same general way that minor children of deceased parents are regarded. The nurture and proper training of such children are subjects of vital interest to the State, as well as to the children themselves, and when the family has thus been broken up, and the children taken to other homes, and exposed to the mutual animosities and jealousies of their parents, and their happiness and usefulness as citizens endangered, the court granting the divorce must be deemed to have full and continuing jurisdiction, during the minority of such children, to make from time to time such orders and modifications thereof, with respect to their care, custody and control, as are deemed expedient, the interests of society and welfare of the children, in all such inquiries, being the paramount and controlling consideration. 2 Bishop, Mar., Div. and Sep., §§1186-1188; *Neil* v. *Neil* [1883], 38 Ohio St. 558; *Dubois* v. *Johnson* [1884], 96 Ind. 6; *Leibold* v. *Leibold* [1902], 158 Ind. 60. * * * . The statute of 1852 expressly confers upon the court granting the divorce, jurisdiction over the nurture, custody and training of the minor children. This jurisdiction applies to the state of minority, and may be exercised in the same case at any time within that period. The fact that the court has rendered judgment upon one state of facts, and disposed of the children as their best interests then required, does not impair the power of the court to decide upon another state of facts, subsequently arising, which affect their welfare."

In the case before us, the court, after a full examination into the facts and a due consideration thereof, evidently decided that it was to the best interests of the child that neither of said parents should have control of it, but that these interests could and would be best subserved if such control was awarded to the child's grandfather, who, the evidence shows, had ample means and an earnest desire properly to care for it. This the court had the power to do, if the welfare of the child demanded it. *Jones* v. *Darnall, supra,* and cases cited; *Schleuter* v. *Canatsy, supra; United States* v. *Green* (1824), 3 Mason 482, Fed. Cas. No. 15,256.

The examination made by the court of the witnesses clearly shows that the fitness and ability of the grandparents to care for the child were inquired into. Appellant made no effort to show that said grandparents were not in every way qualified properly to rear the child, and there has not been a word of testimony pointed out to us that would indicate that the award of the court was not for the best interests of the child. In this state of the record, we would not be warranted in reversing the action of the lower court. The judge hearing the cause, with all the parties before him, had a far better opportunity of knowing what was best for the child than we have, when our judgment must be controlled by the inanimate record.

Judgment affirmed.