## LUELLEN *v.* YOUNGER.

[No. 23,996.　Filed March 21, 1924.]

1. APPEAL.—*Assignment of Errors.—Motion to Strike Out.— Conflicting Affidavits.—Waiver by Delay.*—Where the appellant filed a verified motion for leave to amend the assignment of errors, notice being given to the appellees, who did not appear at the hearing, but thereafter, after the court had overruled said motion, filed a motion to strike out one of the assignments of error on the ground that it had been inserted therein after the appeal was submitted, the motion being supported by affidavits, to which appellant responded by an affidavit that said assignment was written after the original assignment was made but before submission, the appellate tribunal will decline to pass upon the disputed question of fact, for the reason that the appellees were guilty of laches in not challenging the statements in appellant's motion to amend the assignment of error. p. 412.

2. HABEAS CORPUS.—*Appeal.—Weighing Evidence.—Custody of Infant.*—On appeal from a judgment in a *habeas corpus* proceeding for the custody of a child, the court will not weigh the evidence, but will affirm the finding of the trial court when there is evidence sufficient upon which to base the finding, distinguishing cases of *habeas corpus* to be let to bail. p. 416.

3. PARENT AND CHILD.—*Father's Right to Custody.—Common-law Rule Modified.*—Under the modern view of the relation of parent and child, a father's right to the custody and control of his minor children is not unlimited, but continues only so long as such custody and control are properly exercised. p. 417.

4. PARENT AND CHILD.—*Father's Action for Custody.—Paramount Consideration.*—When a minor child has once passed from the custody and control of the father, the welfare of the child is the paramount consideration, and in a *habeas corpus* proceeding for its possession, the court will withhold from the

Luellen v. Younger—194 Ind. 411.

father such custody and control if the welfare of the child demands it. p. 417.

5. HABEAS CORPUS.—*For Custody of Infant.—Rule Stated.*—In an action of habeas corpus for the custody of an infant child, the court acts as *parens patriae*, and the welfare of the child is the paramount consideration. p. 418.

6. PARENT AND CHILD.—*Father's Action for Custody.—Foster Parents.*—When the interests of a child that has been raised by foster parents will best be promoted by leaving it with such parents, the father will not be permitted to obtain its custody by judicial action. p. 418.

7. PARENT AND CHILD.—*Custody of Child.—Irrevocable Gift or Contract.*—In this state, a parent's agreement to give the custody of his infant child to another is not irrevocable. p. 418.

8. HABEAS CORPUS.—*Custody of Child.—Judgment.—Res Judicata.*—A judgment in an action of habeas corpus for the possession of child is not *res judicata* except where the *status* of the controversy remains the same as at the time of the judgment. p. 418.

9. APPEAL. — *Review. — Sufficiency of Evidence. — Evidence Omitted from Record.*—An appellate tribunal will not consider an assignment of error which requires a consideration of the sufficiency of the evidence to sustain the finding of the court unless all of the evidence given in the cause is presented to the court in proper manner and form. p. 419.

From Morgan Circuit Court; *Alfred M. Bain,* Judge.

Action by Charles M. Luellen against Charles E. Younger and his wife, Maria Younger, for a writ of *habeas corpus* for the possession of his infant daughter. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*Evans & DeWitt* and *S. C. Kivett,* for appellant.

*Joseph W. Williams* and *Homer Elliott,* for appellees.

ON MOTION TO STRIKE OUT ASSIGNMENT OF ERRORS.

[Filed January 4, 1922.]

PER CURIAM.—The motion for a new trial in this case was overruled on April 4, 1921, at which time a term appeal was granted, and an appeal bond was thereafter filed on April 30, and the transcript and assignment of errors on June 28.

Appellant filed a printed brief on August 17, and a printed "amended brief" on September 10. Each of these recited that the "errors relied on for reversal" included that—"(2) The court erred in overruling appellant's motion for a new trial. (3) The finding * * * is not fairly supported by the evidence. * * * (4) The finding * * * is clearly against the weight of the evidence. * * * (5) The finding * * * is contrary to law", which is a substantial copy of the assignment of errors as it now appears in the transcript, except that the statement that the court erred in overruling the motion for a new trial appears as the fourth assignment of errors, and that one specification in the motion is that the finding is not "sustained" by sufficient evidence. On October 13, the appellees filed a motion to dismiss the appeal, and on October 18, appellant filed a verified motion for leave to amend the assignment of errors, with an acknowledgement, signed by the attorneys for appellees, of service of notice for October 25, "by leaving a copy of said notice and a copy of the accompanying petition with us." The motion for leave to amend asserted, under oath, that the assignment of errors contained the four specifications above set out, in substance as printed in the briefs, except that they were numbered differently. Appellees did not appear to this motion, but it was overruled October 27, the court being influenced by the fact that the assignment contained the fourth specification.

Four weeks later, on November 25, appellee filed a motion to strike out from the assignment of errors the specification that "the court erred in overruling motion for a new trial" which is written with a pen, while the other three specifications are typewritten, and, in support of the motion, filed affidavits that this specification was not in the assignment of errors when it was examined by counsel on October 13, at the time the mo-

tion to dismiss was prepared and filed. A counter affi-davit by counsel for the appellant states that he noticed the failure of the typewritten assignment of errors, as originally prepared, to specify the overruling of the motion for a new trial as error, and wrote in that speci-fication with a pen before the cause was submitted (which was on July 28), as preliminary to preparing the brief, filed August 17.

Upon this conflict of statements by counsel, we must decline to pass upon the disputed question of fact. That the assignment sought to be stricken out appears in the printed brief lends some support to the position of ap-pellant, while other facts tend to support the appellees. But we do not think we should decide the question pre-sented. If the statements in the brief and in appellant's verified motion for leave to amend the assignment of errors that one specification of such motion was that "the court erred in overruling motion for a new trial" were erroneous, appellees should have challenged them promptly, and not have waited until nearly a month after the court had ruled on said motion, being more than three months after appellant's original brief was filed, and two and a half months after he filed his amended brief. Appellees did not file a brief until De-cember 5, but no reason is made to appear why they did not challenge the statement in appellant's motion for leave to amend the assignment of errors before the court had made a ruling based upon what the verified motion stated and the facts shown by the transcript indicated to be true at the time that ruling was made.

Appellee's motion to strike out the fourth specifica-tion of the assignment of errors is overruled.

## ON THE MERITS.

TRAVIS, J.—This is an action by appellant against appellees for a writ of *habeas corpus* to regain the pos-

session of his infant daughter, Arthela D. Luellen.  A trial upon the writ and the return thereto resulted in the finding and judgment for the appellees.  Appellant filed his motion for a new trial for the causes, that the finding of the court was not sustained by sufficient evidence, and was contrary to law.  The action of the court in overruling this motion is assigned as error.

The subject of this inquiry was born May 11, 1915, five years after the marriage of the father, this appellant, and mother, and was left motherless seventeen days after her birth.  Appellees, Maria Younger and Charles E. Younger her husband, are the sister and brother-in-law respectively of the deceased mother. Four weeks after the funeral of the mother, appellant placed the infant in the custody of appellees, after they had told him, "I want it distinctly understood that if the baby lived and became attached to us that they would never separate, and he said he would never do it."  It has been in their custody ever since, except a few visits to its father in Mooreland, Indiana.  Appellant's relations had refused to take the infant unless they might adopt it, which the father refused to consent to do.  The infant was not robust the first two years of its life, on which account, appellees gave it special watchful care, and prepared special food for it. Part of this time, the baby was under the care of physicians.  The appellee aunt of the infant was twenty years the senior of her deceased sister, and cared for her and nurtured her to womanhood after the death of their mother, which occurred when appellant's wife was two and one-half years of age.  Appellees, the aunt and uncle of the infant, were sixty and fifty-five years of age respectively when the baby was given into their custody.  At that time and at the time of the trial, they had no children of their own.  They owned their own home in Martinsville, which was a dwelling of seven

rooms equipped with furnace and bath. Appellant is fifty-three years of age and owns a dwelling and large lot of the value of $4,500, but lives with his maiden sister, fifty years of age, in Mooreland, Indiana. This sister owns her own home, which is comfortable, and has property to the value of $15,000. She was willing to take this child into her home, and rear and care for it, in order that it might be with its father. She had had the experience of rearing two boys, one a nephew, and had cared for a sister's children at times. The moral character of appellant and of each of the appellees is good. The ability of either appellant or appellees to bear the burden financially to rear this child to womanhood is admitted. Appellant had given to appellees the aggregate sum of $582 to pay for the expense of the child. Appellees taught the child to call its father "papa", and made no attempt to estrange it from its father.

Appellant makes the proposition that he is entitled to the custody of his minor child under the statute, "The father of such minor * * * shall have the custody of the person and control of the education of such minor", (§3065 Burns 1914, §2518 R. S. 1881) which is an assertion of the common-law right of a father to the custody of his child, and cites many cases besides the cases in this state in support of his right under this statute. In oral argument, appellant made the further proposition that this court, in considering the appeal, had the right to weigh the evidence for the reason that the Supreme Court will weigh the evidence if necessary in appeals wherein *habeas corpus* is involved. Upon the application for writ of *habeas corpus* to be admitted to bail, it has been held that the Supreme Court upon appeal will weigh the evidence and pass on it as a trial court. *Ex parte Moore* (1868), 30 Ind. 197; *Ex parte Sutherlin* (1877),

56 Ind. 595; *Ex parte Walton* (1881), 79 Ind. 600; *State* v. *Hedges* (1912), 177 Ind. 589, 99 N. E. 417.

But in the consideration of an appeal of an action for writ of *habeas corpus* for the custody of a child, the court will not weigh the evidence, but will affirm the finding of the trial court when there is evidence sufficient upon which to base the finding. *McKenzie* v. *State, ex rel.* (1881), 80 Ind. 547; *Mahan* v. *Hendricks* (1912), 181 Ind. 630, 99 N. E. 418; *Addington* v. *Retter* (1922), 192 Ind. 268, 134 N. E. 888.

According to Sir. William Blackstone, under the ancient Roman law, the child was the property of the father, in the nature of things, rather than of persons, which property right over them in the father extended, to the power of life and death (1 Blackstone's Com. 452). The rigor of the rule is ameliorated by giving to the child the status of a person and entitled to life, but the father retained the paramount right to the custody and control of his infant children, upon the principle that he is in duty bound, by the law of nature and society, to maintain, protect, nurture, and educate them. *Henson* v. *Walts* (1872), 40 Ind. 170; *In re Hakewill* (1852), 22 Eng. L. & Eq. 395, 12 C. B. Rep. 223; *Johnson* v. *Terry* (1867), 34 Conn. 259; *State* v. *Stigall* (1849), 22 N. J. Law 286.

Under the more modern point of view, the common-law right to the custody and control of minor children is no longer unlimited or inalienable, and con-

**3, 4.** tinues only so long as such custody and control are properly exercised. This transition brings us to the modern principle applied to nearly all cases for the custody of minor children, when once out from under the custody and control of the parent, that the welfare of the child is to be regarded as the paramount consideration, and the courts will withhold from the

father such custody and control, once he is voluntarily or involuntarily deprived of it, if the good and welfare of the child demand it. *McKenzie* v. *State, ex rel., supra; Brooke* v. *Logan* (1887), 112 Ind. 183, 13 N. E. 669; *Addington* v. *Retter, supra; The Queen* v. *Gyngall* (1893), 2 Law Rep. Q. B. D. 232.

This principle is grounded in the rule, now well established in the United States, that in determining disputes as to the custody of children, the court acts

**5, 6.** as *parens patriae* and regards the welfare of the child as the controlling consideration. *Kelsey* v. *Green* (1897), 69 Conn. 291, 37 Atl. 679, 38 L. R. A. 471. Thus, when the interests of the child will best be promoted by leaving it with its foster parent, the father will not be permitted to obtain its custody by judicial action. *Hussey* v. *Whiting* (1896), 145 Ind. 580, 44 N. E. 639, 57 Am. St. 220; *Richards* v. *Collins* (1889), 45 N. J. Eq. 283, 17 Atl. 831, 14 Am. St. 726.

Appellees, both by brief and oral argument, claim their right to retain the custody of the child under the agreement by the father to relinquish the custody

**7, 8.** and control to them, releasing all his parental right to reclaim the custody of his child. The claim appears to be the rule of law in many jurisdictions, but the courts of Indiana have been more conservative, and the rule of law in our state is that a parent may not irrevocably by contract give the custody of his infant child to another. *Wishard* v. *Medaris* (1870), 34 Ind. 168; *Brooke* v. *Logan, supra; Hussey* v. *Whiting, supra; Wood* v. *Shaw* (1914), 92 Kans. 70, 139 Pac. 1165; and cases cited in note 93, 13 C. J. 490. Even though such agreement to transfer the custody of the child be held binding, such a construction is not inherent in the agreement, from which the rule developed that a judgment in favor of the foster parent under such an agreement was not *res judicata* but ap-

plies in *habeas corpus* only where the *status* of the controversy remains the same as at the time of the judgment. *Weir* v. *Marley* (1889), 99 Mo. 484, 6 L. R. A. 672; *Mercein* v. *People* (1840), 25 Wend. (N. Y.) 64, 35 Am. Dec. 653; *McConologue's Case* (1871), 107 Mass. 154; Freeman, Judgments (3d ed.) §324; Church, Habeas Corpus, §§386, 387.

The trial court having had full opportunity to see the witnesses testify and to see the infant at and during the trial, had by his senses advantages in weighing and considering the testimony this court cannot in any manner gain. Under the rule as above quoted, the evidence will not be weighed on this appeal. Therefore, it must be concluded that the trial court had under consideration, in weighing the evidence, the welfare of the child, which, under the circumstances, would be promoted by leaving the custody with appellees.

Appellees call attention to an omission in the bill of exceptions of certain evidence given at the trial. An examination of the bill of exceptions discloses 9. such omission. No action has been taken by appellant to supply the omission by *certiorari*. The court will not consider an assignment of error which requires a consideration of the sufficiency of the evidence to sustain the finding of the court unless all of the evidence given in the cause is presented to the court in proper manner and form. *McMurran* v. *Hannum* (1916), 185 Ind. 326, 113 N. E. 238.

Judgment affirmed.