DUCKWORTH *v.* DUCKWORTH ET AL.

[No. 25,977.   Filed February 23, 1932.]

*G. W. Butler,* for appellant.

*Omar O'Harrow* and *Kivett & Kivett,* for appellees.

MARTIN, J.—This action in *habeas corpus,* for the custody of his minor son, Otis, was brought by Richard Duckworth against William A. Duckworth, his brother, and Lois, his brother's wife.

The defendants filed a return to the writ denying that they illegally restrained Otis, and stating that they were ready and willing to abide any order of the court with reference to the child and asking to be discharged. Otis appeared by next friend and filed an intervening petition asking that he be placed in the custody of the defendants, his uncle and aunt.

The court overruled the plaintiff's motion to strike out the intervening petition, and, upon the filing of answers in general denial to the return and to the intervening petition, tried the cause and found in favor of the defendants. Richard Duckworth appeals, and assigns as error the overruling of his motion for a new trial, wherein it is alleged that the finding is not sustained by sufficient evidence and is contrary to law.

The evidence shows the following facts: Richard Duckworth is a street car conductor, 45 years of age, and lives in the northwest part of the city of Indianapolis with his second wife and two children, a boy 15 and a girl 10 years of age. These two children, as well as Otis, age 12, and another son 17 years of age, were born to his former marriage. That marriage was terminated by a divorce action in 1924, which Richard did not contest. The mother of the children was given their custody by the judgment of divorce and Richard was ordered to make weekly payments for their support. He made these payments for a while, then stopped paying, and later resumed them. The wife, after the divorce, lived in Spencer and worked. Otis then sometimes visited his father for a week at a time. When his mother

became ill and was unable longer to care for Otis, he was taken, on September 23, 1929, by his uncle William, age 46, who, with his wife and two children, live on his 116-acre mortgaged farm.

Richard and William were not on good terms, their estrangement resulting from the settlement of an estate. After the death of Otis' mother, early in 1930, Richard went to the home of William and Lois to get Otis, but they refused to let the boy leave. Richard then caused William and Lois to be arrested and placed in jail on a charge of kidnapping, which charge was later dismissed. Lois testified she was "willing to obey any order of the court except that the father cannot come to our house."

Otis Duckworth, the subject of this action, testified that he was 12 years old, was in the seventh grade of school at Paragon and liked his teachers; that he made his home with his uncle William, helped around the farm and got along with the family all right. He said: "I like the farm and live stock. I don't know my stepmother well enough to say whether I like her or not. I would rather be a farmer than a street car conductor." He told of making a short visit to his father, and said: "But I didn't want to go, so I came back." He said: "My father sent me money to come up to live with him, but I didn't go . . . I want to stay where I am. I want the court to fix it so I can stay there. I don't want to go live with my father because he has not treated us right in the past. My father has not lived with my mother for about six years."

Ephriam Duckworth, the 17-year-old son of Richard, who lives in Jasonville with an aunt, testified that his father did not support the family for several years. He said: "My mother talked about father some after the separation. I don't feel extra good toward my father now."

The only evidence that the appellant is not a proper person to have custody of his son is the fact of his prosecution (prior to the divorce) for child neglect before a justice of the peace in Owen County, who found him guilty and bound him over to appear in the circuit court, and the fact that his first wife was given custody of the children in the divorce action in which she charged him with being an unfit person to be entrusted with their custody. The brother of the deceased Mrs. Duckworth testified that Richard "did not take care of the children" since 1924, but that "I know nothing against Richard Duckworth." The present Mrs. Duckworth testified that she would do her best to assist in caring for Otis Duckworth if granted his custody, and there was evidence that the home conditions in Richard's present home were good. The evidence also showed that the home and school conditions at the uncle William's were good, and that Otis was well treated by William and Lois.

The appellant makes the following propositions of law to sustain his assignment of error: (1) "A mother cannot . . . deprive the father of his right to the custody of their minor child after her death," *Gilmore* v. *Kitson* (1905), 165 Ind. 402, 74 N. E. 1083; (2) a decree of divorce with custody of children to the mother is not conclusive as against the father in a *habeas corpus* proceeding after the death of the mother against one not a party to the divorce proceeding, *Bryan* v. *Lyon* (1885), 104 Ind. 227, 3 N. E. 880, 54 Am. Rep. 309; (3) the natural parents are entitled to the custody of their minor child except where they are unsuitable persons to be intrusted with the care and control, *Jones* v. *Darnall* (1885), 103 Ind. 569, 572, 2 N. E. 229, 53 Am. Rep. 545; *Gilmore* v. *Kitson, supra; Child* v. *Dodd* (1875), 51 Ind. 484; (4) a parent has a legal right to visit his children at convenient and proper times in a

decent manner without molestation, *Burge* v. *Burge* (1878), 88 Ill. 164, and, where no provision is made in a decree permitting the father to visit the child, the decree should be modified, *Breedlove* v. *Breedlove* (1901), 27 Ind. App. 560, 61 N. E. 797.

The foregoing are well-settled propositions of law, but their application to the instant appeal does not require a reversal of the judgment.

Three interests are involved in all questions touching the custody of children, those (1) of the child, (2) of the parents and (3) of the State. *Commonwealth* v. *McDonald* (1910), 20 Pa. Dist. Rep. 1071. "In determining disputes as to the custody of children, the court acts as *parens patriae* and regards the welfare of the child as the controlling consideration."[1] *Luellen* v. *Younger* (1923), 194 Ind. 411, 133 N. E. 495, 143 N. E. 163. "The interests of society and the established policy of the law make the welfare of the child paramount to the claims of a parent," *Hussey* v. *Whiting* (1896), 145 Ind. 580, 582, 44 N. E. 639, 57 Am. St. 220; *Addington* v. *Retter* (1922), 192 Ind. 268, 134 N. E. 888, and the welfare of the child is the most controlling of the three interests, since, upon its proper determination, the other two are in a great degree dependent. *Commonwealth* v. *Hart* (1880), 8 Wkly. Notes Cas. (Pa.) 156.

"Of the many ties that bind humanity, that which unites the parent and the child is the earliest and the most hallowed . . . and in all civilized countries it is regarded as sacred." *Orr* v. *State* (1919), 70 Ind. App. 242, 123 N. E. 470. Therefore, "parents have the natural right to the custody of their children," and "where

*Note 1.* "It is reasonable and just that the courts should have this power for the benefit of infants. Their custody should not depend upon the accident of possession. The real question is to whom should they be entrusted for their own good and that of society." *Bullock* v. *Robertson* (1902), 160 Ind. 521, 65 N. E. 5.

one parent is dead, the surviving parent, if fit, has the right to the custody." 46 C. J. 1223, 1224.

"Both under the common law and the statutes of this State, the natural parents are entitled to the custody of their minor children, except when they are unsuitable persons to be entrusted with their care, control and education." *Gilmore* v. *Kitson, supra; Jones* v. *Darnall, supra.* "The universal law of all nations gives the possession and control of children to the male parent, if begotten and born of wedded parents."[2] *Child* v. *Dodd, supra; McGlennan* v. *Margowski* (1883), 90 Ind. 150. "In this state the father, if a suitable person, and, if not, then the mother, if a suitable person, has the preference to the custody of the person, control and education of their legitimate minor children, but either or both may be deprived of such custody in some appropriate proceeding wherein it appears that the welfare of such children is paramount to the claims of the parent." *McDonald* v. *Short* (1921), 190 Ind. 338, 130 N. E. 536.

Ordinarily, a parent who is of good moral character and a proper person to have the custody of a child and is reasonably able to provide for it is entitled to its custody as against other persons, *Gilmore* v. *Kitson, supra; Brooke* v. *Logan, supra,* note 2; *Bryan* v. *Lyon, supra; McGlennan* v. *Margowski, supra; Orr* v. *State, supra,* even though such others are in all respects suitable to have the custody, are much attached

---

*Note 2.* "The father is the natural guardian of his infant child, is responsible for its raising and education, and has the right to its custody." *State, ex rel.,* v. *Banks* (1865), 25 Ind. 495.

"Other things being equal, . . . the father of a legitimate infant child is entitled to the possession and control of the child's person as against any other claimant." *McGlennan* v. *Margowski, supra.*

"When the father is a fit and suitable person to have the custody and care of the child, he is entitled to it, by force of the statute, as against the statutory guardian." *Brooke* v. *Logan* (1887), 112 Ind. 183, 13 N. E. 669, 2 Am. St. 177.

to the child, and better able to afford it material advantages, and although the child is attached to and may be happier with such third person, *State, ex rel.*, v. *Banks, supra,* note 2; *Henson* v. *Watts, infra; Jones* v. *Darnall, supra;* §§11, 17, 19—46 C. J. 1228. But the right of the parents to the custody of their children is not absolute.[3] It "may be taken away, when an overweening [overweighing] or strong necessity is shown as to the unfitness of the father of the child to protect and provide for it." *Child* v. *Dodd, supra.* "The reasons must be strong and cogent (to) . . . justify a court in withholding from him a right . . . conferred by the positive law of the land, and in consonance with the law of nature and the dictates of common humanity." *Henson* v. *Watts* (1872), 40 Ind. 170. The welfare of the child will outweigh the legal rights of the parents when the parents are unsuitable, unfit or incompetent to take care of the child, *Young* v. *State* (1861), 15 Ind. 480; *Garner* v. *Gordon, infra,* and may outweigh the legal rights of the parents even though they be suitable persons to have such custody, where the real and permanent interests of the child demand a different disposition. *Berkshire* v. *Caley, infra; Orr* v. *State, supra; Hussey* v. *Whiting, supra; Mahan* v. *Hendricks* (1912), 181 Ind. 630, 99 N. E. 418; *Corn* v. *Hollon* (1921), 191 Ind. 248, 132 N. E.

*Note 3.* " 'It is an entire mistake to suppose the court is at all events bound to deliver over the infant to his father, or that the latter has an absolute vested right in the custody. . . . The right of the father to have the custody of his infant child, in a general sense it is true. But this is not on account of any absolute right of the father, but for the benefit of the infant, the law presuming it to be for its interest to be under the nurture and care of its natural protector, both for maintenance and education. When, therefore, the court is asked to lend its aid to put the infant into the custody of the father, and to withdraw him from other persons, it will look into all the circumstances and ascertain whether it will be for the real, permanent interest of the infant.' " *Jones* v. *Darnall, supra; Schleuter* v. *Canatsy* (1897), 148 Ind. 384, 47 N. E. 825, and *Addington* v. *Retter, supra;* each quoting from *United States* v. *Green* (1824), 3 Mason 482, Fed. Cas. No. 15526—Story, J.

587. " 'The courts . . . may, in their sound discretion, and when the morals or safety or interests of the children strongly require it, withdraw their custody from the father and confer it upon the mother, or take the children from both parents and place the care and custody of them elsewhere." *Jones* v. *Darnall, supra;* quoting from §248 (now §743, vol. 1, p. 794, 6th Ed.) Schouler, Marriage, etc., and Domestic Relations.

It may now be stated as a general rule, deduced from the cases above cited (and expressly so stated in many of them), that the welfare and best interests of the child are the controlling elements in the determination of all disputes as to the custody of a minor child. See, also, *Johnson* v. *Smith* (1931), *ante* 214, 176 N. E. 705; *Shoaf, Gdn.,* v. *Livengood* (1909), 172 Ind. 707, 88 N. E. 598; *McKenzie* v. *State, ex rel., infra; Webber* v. *Redding, infra.* "The welfare of the child is the object to be secured, and that requires attention to many circumstances; such as its sex, age, health, social position . . . just expectations of property . . . and the state of its morals and education, and the surest means, . . . of securing for it . . . discipline and instruction necessary to qualify it for that (its) station in life." *Garner* v. *Gordon* (1892), 41 Ind. 92, 106. "The legal right of the parents, however, should never be lost sight of as an influential factor, and the court should always give the custody to them, unless they so conduct themselves, or the conditions are such, as to render it essential to the safety and welfare of the child in some serious and important respect, either physically, intellectually, or morally, that it should be removed from their custody." §15, 46 C. J. 1239.

A parent, who is at the time when the question arises, a suitable and competent person to have the custody of the child will (ordinarily) not be refused such custody

because at some time in the past his conduct, habits, health or circumstances were such that he would not then have been a proper custodian. 46 C. J. 1245.

But where, as here, there has once been a judicial determination of a parent's unfitness for the custody of his child, and such child has passed beyond his custody and control, a different question is presented. In such case, he can reclaim its custody only upon a showing that there has been a change in conditions, a reformation of his character, that he is now a fit person to have charge of the child and that the best interest of the child would be served by again giving him its custody.

A court that grants a divorce has the continuing duty, upon a proper petition, to see that the child of the divorced parties is properly cared for, such child being, in a sense, the ward of the court.

"The nurture and proper training of such children are subjects of vital interest to the State, as well as to the children themselves, and when the family has thus been broken up, . . . the court granting the divorce must be deemed to have full and continuing jurisdiction, during the minority of such children, to make from time to time such orders and modifications thereof, with respect to their care, custody and control, as are deemed expedient, the interests of society and welfare of the children, in all such inquiries, being the paramount and controlling consideration." *Keesling* v. *Keesling* (1908), 42 Ind. App. 361, 85 N. E. 837.

"When once out from under the custody and control of the parent, that the welfare of the child is to be regarded as the paramount consideration, and the courts will withhold from the father such custody and control, once he is voluntarily or involuntarily deprived of it, if the good and welfare of the child demand it." *Luellen* v. *Younger, supra.*

The burden of proof is upon the parent seeking to regain custody of the child to show the change in conditions, his reformation and that the best interests of the child would be served by giving him the custody.

Upon the death of a mother to whom, in a proceeding for divorce, the custody of children was awarded on the ground that the father was not a suitable person to have their care, "it does not follow, . . . that . . . such adjudication shall be a perpetual adjudication of his unfitness, under all and changed circumstances. . . . It might well be that his circumstances have materially changed since the judgment in the divorce case, and that he has changed with them," *Bryan* v. *Lyon, supra.* Whether or not there have been such changes is a matter to be determined by the evidence.[4]

The preference of the child as to who shall be its custodian will not as a rule be allowed to prevail over a legal right, *Bounell* v. *Berryhill* (1851), 2 Ind. 613; *State, ex rel.,* v. *Banks, supra; Henson* v. *Watts, supra;* but the preference of a child of the age of discretion may be considered on the question of welfare, and in connection with other circumstances that may outweigh legal right. 46 C. J. 1241, §17.

"The wishes or desires of an infant of discretion, in respect to his or her custody, are frequently considered by the trial court in the exercise of its discretion," *Palin* v. *Voliva* (1902), 158 Ind. 380, 63 N. E. 760.

"(This is) not because such infant has the legal right to demand that his wishes be regarded, but because it is proper for the court to be informed relative thereto, in order that it may be better prepared wisely to exercise its discretion upon the question of the custody of such infant. The court, however, is not to be influenced in any degree by

---

*Note 4.* In *Bryan* v. *Lyon,* the court examined at length the evidence presented by the parties and affirmed the judgment of the trial court which refused to give the custody of the children to the father but continued it in an uncle and aunt.

the mere whims of the infant, but may have regard for its feelings, attachments, and reasonable preferments, and its probable contentment and happiness, incidental to its custody," *Berkshire* v. *Caley* (1901), 157 Ind. 1, 9, 60 N. E. 696.

"The disposition of children . . . devolves upon the courts a delicate, and sometimes painful, responsibility," *McKenzie* v. *State, ex rel.* (1881), 80 Ind. 547. Here, as in *Mahan* v. *Hendricks, supra,* "the case is a close one upon the evidence," and, as in *Addington* v. *Retter, supra,* "the evidence shows that the child would have a good home with either" (of the parties). The trial court, as between these parties, may have had a difficult and perplexing question to decide, but it heard the testimony, saw the witnesses and decided the question. It "had greater facilities for weighing the evidence, and for reaching a safe conclusion . . . than we can have with the record only before us," *McKenzie* v. *State, ex rel., supra; Addington* v. *Retter, supra.* It "had full opportunity to see the witnesses testify and to see the infant at and during the trial, had . . . advantages in weighing and considering the testimony this court cannot in any manner gain," *Luellen* v. *Younger, supra.*

The trial court had before it the question of this father's reformation and the paramount question of the welfare of the child. The determination of both questions rested upon the sound judicial discretion of the trial court rather than upon hard and fast rules of law. *Bryan* v. *Lyon, supra; Webber* v. *Redding* (1928), 200 Ind. 448, 163 N. E. 269. Our review of the action of the trial court in this case is limited to judicial abuse of discretion, and, from the evidence which we have briefly set out above, we have determined that no case has been made out here to show an abuse of discretion by the lower court, and we hold

that the finding and judgment are sustained by sufficient evidence.

No motion was made by appellant to modify the judgment so as to specify a time and place when and where he could visit his son. The failure to make such an order of the court's own motion is not ground for reversing the judgment.

Judgment affirmed.

Travis, C. J., absent.