**Carl J. HARRIS and Carolyn Harris, Appellants (Intervenors Below),**

v.

**Rebekah Lynn SMITH, Appellee (Respondent Below),**

and

**Jackie Devron Harris, Nominal Appellee (Petitioner Below).**

No. 47A01–0011–JV–405.

Court of Appeals of Indiana.

Aug. 14, 2001.

Rehearing Denied September 4, 2001.

George A. Lohmeier, Allen Wellman McNew, Greenfield, IN, Attorney for Appellant.

Thomas A. Berry, Bloomington, IN, Attorney for Appellee.

## OPINION

SULLIVAN, Judge

Appellants, Carl J. and Carolyn Harris (the Harrises), challenge the trial court's order granting custody of their minor grandchild, A.S.H., to Rebekah Lynn Smith, the child's mother. The Harrises present two issues for our review, which we restate as: 1) whether the trial court used an incorrect standard of law in determining that Rebekah should have custody of A.S.H.; and 2) whether the trial court's decision amounted to an abuse of discretion.

We affirm.

The record reveals that A.S.H. was born to Rebekah on April 22, 1996. On May 26, 1997, Rebekah was convicted of misdemeanor possession of marijuana. In April 1998, by agreement of the parties, the Harrises' son, Jackie Devron Harris, established paternity of A.S.H. On May 28, 1998, after Rebekah had tested positive for marijuana use, the State petitioned to revoke the suspended sentence she received for marijuana possession. On August 31, 1998, Rebekah and A.S.H. moved into the Harrises' home. On March 30, 1999, Rebekah pleaded guilty to operating a vehicle while intoxicated (OWI), and was given a suspended sentence. In May 1999, Rebekah left the Harrises' home to live with a girlfriend. Although Rebekah had custody of A.S.H., the Harrises cared for A.S.H. in their home after Rebekah moved out. On October 18, 1999, the State petitioned to revoke the suspended sentence Rebekah received for her OWI conviction because of her failure to pay court costs as provided for in her plea agreement.

At this point, Rebekah had no job, was being evicted from her residence, and was facing the possibility of incarceration for the OWI conviction. Thereafter, on December 2, 1999, Rebekah, A.S.H.'s father, and the Harrises filed a joint petition for modification of custody, wherein the parties agreed to give custody of A.S.H. to the Harrises. At approximately the same time, the Harrises gave Rebekah $5000 and an automobile and agreed to pay certain court costs and fines. The trial court issued an order granting the petition the same day it was filed.[1]

The order granting the Harrises custody of A.S.H. stated that both parents "shall be entitled to visit [A.S.H.] at all reasonable and proper times agreeable to Carl J. Harris and Carolyn Harris." Record at 20. The Harrises initially allowed Rebekah to have unsupervised overnight visitations with A.S.H. However, they eventually tried to avoid contact with Rebekah, limited her visitation, and required her to come to their home to visit A.S.H. On February 6, 2000, Rebekah pleaded guilty to a charge of criminal mischief. On April

---

1. The Harrises claimed at the hearing that Rebekah offered to "sell" A.S.H. to them in return for $10,000. Rebekah, however, testified the Harrises offered her the money to help her "get [her]self together" and that she thought, "as soon as I got myself together I could have my daughter back." Record at 211. As neither the joint petition nor the trial court's order mentioned the money and automobile given to Rebekah, we assume the trial court had no knowledge of this transaction.

5, 2000, due to continuing problems with the allowed visitation, Rebekah wrote a letter to the trial court requesting custody of A.S.H. The trial court treated this as a pro se petition to modify custody. On May 9, 2000, Rebekah filed a formal petition requesting custody of A.S.H. On June 23, 2000, Rebekah was again arrested for OWI.

Eventually, a hearing on Rebekah's petition to modify custody was held before a special judge. After the hearing, both parties filed briefs per the trial court's request. On November 13, 2000, the trial court entered an order awarding custody to Rebekah.[2] The Harrises now appeal.[3]

■ In Indiana, there has long been a presumption that a parent, rather than a third party, should have custody of his or her child. As noted by our Supreme Court in *Duckworth v. Duckworth,* 203 Ind. 276, 282–83, 179 N.E. 773, 775 (1932):

> "Ordinarily a parent who is of good moral character and a proper person to have the custody of a child and is reasonably able to provide for it is entitled to its custody as against other persons … even though such others are in all respects suitable to have the custody, are much attached to the child, and better able to afford it material advantages and although the child is attached to and may be happier with such third person." (citations omitted).

*See also Hendrickson v. Binkley,* 161 Ind. App. 388, 393–94, 316 N.E.2d 376, 380

(1974), *cert. denied,* 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 98 (1975); *In re Custody of McGuire,* 487 N.E.2d 457, 460 (Ind.Ct. App.1985); *Sebastian v. Sebastian,* 524 N.E.2d 29, 34 (Ind.Ct.App.1988); *Teegarden v. Teegarden,* 642 N.E.2d 1007, 1009 (Ind.Ct.App.1994) (all holding that it is presumed it will be in the best interests of the child to be placed in the custody of the natural parent).

■ The Harrises cite *Duckworth* for the proposition that once the parent has lost custody by judicial determination, the parent is required to show a change in circumstances, his or her reformation, and that the best interests of the child would be served by such custody modification. 203 Ind. at 285, 179 N.E. at 776. However, in *McGuire* this court held that a nonparent who seeks to displace the parent as custodian must rebut the parent's presumptively superior right to custody. 487 N.E.2d at 460. Even when a parent initiates an action to re-obtain custody of a child who has been in the custody of a third party, the burden of rebutting this presumption remains upon the third party. *Id.* at 460–461.

■ The Harrises ask us to reject or modify *McGuire,* arguing that when there has been a judicial finding of parental unfitness, no presumption in favor of the parent should exist. However, it is not necessary for us to reject or modify *McGuire;* a third party may rebut the parent's presumptively superior right to custody by showing, "by clear and cogent evidence, *that the parent is unfit….*" *Id.* at 460 (emphasis supplied). Here, the trial court did not find Rebekah to be an unfit parent. Nevertheless, the Harrises argue:

---

2. The order modifying custody granted visitation rights to A.S.H.'s father, Jackie, but authorized the Harrises to "pick up and return [A.S.H.] for the purpose of Father exercising his Parenting Time." Record at 110.

3. Per order of this court, the trial court's custody order was stayed pending the outcome of this appeal, and A.S.H. remains in the custody of the Harrises.

"[W]hen parents get to the point when they are ready to concede that it is not in the best interest of their children to be in their care, and responsible third parties apply to a court to ratify that decision with a judicial decree of custody, they ought no longer be allowed simply to change their mind at any moment and walk back into a courtroom and have it presumed that they are entitled to have their child returned to them, all as though they had never lost them or given them up in the first place." Appellant's Brief at 16.

Thus, the Harrises claim Rebekah's agreement to put A.S.H. in their custody is tantamount to an admission of unfitness. We do not agree. As recently noted by this court in *Froelich v. Clark*, 745 N.E.2d 222, 233 (Ind.Ct.App.2001), *trans. denied:*

"For the sake of children, society should encourage parents who are experiencing difficulties raising them to take advantage of an available 'safety net,' such as a grandparent who is willing to accept temporary custody of a child. It would discourage such action by parents in difficult straits and discourage efforts to 'reform' or better their life situation if their chances of later reuniting with their children were reduced." [4]

■ Although they acknowledge the holding in *Froelich*, the Harrises ask us to place concerns about the stability of a child's environment over the parent's presumptive right to custody over his or her child. In support of their position, the Harrises cite *Joe v. Lebow*, 670 N.E.2d 9 (Ind.Ct.App.1996). In *Joe*, we held that amendments to the child custody modification statutes did not abrogate the long-standing policy favoring a child's stability reflected in prior case law.[5] *Id.* at 20–21. To be sure, stability is a crucial factor which trial courts must consider when determining the best interests of a child in the context of a custody modification. *Id.* Indeed, the law currently provides that stability be considered in parent/non-parent custody disputes. In *McGuire*, the court stated that a non-parent may also rebut the parent's presumptively superior right to custody by a clear and cogent showing that the parent "has acquiesced in or voluntarily relinquished custody to the third party for such a long period of time that 'the affections of the child and the third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child.'" 487 N.E.2d at 460 (quoting *Hendrickson*, 161 Ind.App. at 394, 316 N.E.2d at 380). This would certainly require the trial court to consider stability in making its determination.

■ We also note that the preference in favor of a parent, who is not unfit, to have custody of his or her child is not merely based upon common law. As noted in *Froelich*, this preference is rooted in the Due Process Clause of the Fourteenth Amendment. 745 N.E.2d at 228 (citing *Troxel v. Granville*, 530 U.S. 57, 65–66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)); *cf. Crafton v. Gibson*, 752 N.E.2d 78 (Ind.Ct.App.2001) ("[T]he Due Process Clause of the Fourteenth Amendment to the United

---

4. The Harrises seek to distinguish *Froelich* by noting that the issue before the court in that case was the termination of a guardianship, not a custody modification. However, the *Froelich* court noted that the issue before it was, in essence, a child custody dispute and analyzed it as such. *Id.* at 227.

5. In *Joe*, the child custody dispute was between two parents, and the applicability of the presumption in favor of a parent over a non-parent was not at issue. *Id.* at 11.

States Constitution protects the fundamental right of parents to make decisions concerning the care, custody and control of their children."). Thus, we may not ignore the constitutionally based preference that a parent, rather than a non-parent, have custody of his or her child where that parent has not been shown to be unfit.

▮▮▮▮ The Harrises next argue that, even if the parental presumption were applied, the trial court' abused its discretion when it granted Rebekah custody of her daughter.[6] Upon appeal of child custody decisions, this court will neither reweigh evidence nor determine the credibility of witnesses. *Clark v. Clark,* 726 N.E.2d 854, 856 (Ind.Ct.App.2000), *reh'g denied, trans. denied.* Instead, we consider only the evidence which supports the trial court's decision. *Louis v. Kenseth,* 725 N.E.2d 155, 157 (Ind.Ct.App.2000). Decisions regarding child custody fall within the sound discretion of the trial court, and we will not disturb such determinations upon appeal absent an abuse of that discretion. *Id.; Clark,* 726 N.E.2d at 856. Nor will we substitute our judgment for that of the trial court. *Id.* A trial court abuses its discretion only where its decision is against the logic and effect of the facts and circumstances before the trial court or the reasonable inferences to be drawn therefrom. *Id.*

▮▮▮▮ The *Froelich* court, noting inconsistencies in how the parental preference has been applied, set forth the following standard for use in determining parent/non-parent custody disputes:

"First, there is a presumption in all cases that the natural parent should have custody of his or her child. The third party bears the burden of overcoming this presumption by clear and cogent evidence. Evidence sufficient to rebut the presumption may, but need not necessarily, consist of the parent's present unfitness, or past abandonment of the child such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child. However, a general finding that it would be in the child's 'best interest' to be placed in the third party's custody is not sufficient to rebut the presumption. If the presumption is rebutted, then the court engages in a general 'best interests' analysis. The court may, but is not required to, be guided by the 'best interests' factors listed in Indiana Code Sections 31–14–13–2, 31–14–13–2.5, 31–17–2–8, and 31–17–2–8.5, if the proceeding is not one explicitly governed by those sections.

If a decision to leave or place custody of a child in a third party, rather than a parent, is to be based solely upon the child's 'best interests,' as opposed to a finding of parental unfitness, abandonment, or other wrongdoing, such interests should be specifically delineated, as well as be compelling and in the 'real

---

6. The Harrises acknowledge that, in its order modifying custody, the trial court made no mention of the presumption in favor of Rebekah as the parent. Instead, the trial court appears to have required a showing of a substantial change in one or more of the factors that the court may consider in determining a child's best interests. *See* Ind.Code § 31–14–13–6 (Burns Code Ed. Supp.2000). Be that as it may, the issue of the presumption in favor of parents was argued before the trial court, and we generally presume that the trial court followed the law and made the proper considerations in reaching its decision. *Castaneda v. Castaneda,* 615 N.E.2d 467, 470 (Ind.Ct.App.1993); *Turpen v. Turpen,* 537 N.E.2d 537, 539 (Ind.Ct.App.1989). Moreover, even if the trial court did fail to apply the presumption in favor of Rebekah, it still awarded custody of A.S.H. to her. Therefore, any error would have favored the Harrises.

and permanent' interests of the child." 745 N.E.2d at 230–31 (citation omitted). We adopt the *Froelich* analysis for use in the present case. Using this analysis, and the standard of review set forth above, we conclude that the trial court did not abuse its discretion in awarding Rebekah custody of A.S.H.

The Harrises' brief is replete with citations to the evidence presented at the hearing which supported their position that Rebekah should not have custody of A.S.H.[7] Much of this evidence relates to Rebekah's past behavior. A non-parent seeking custody is required to prove the parent's unfitness at the present time, not at some time in the past. *Froelich*, 745 N.E.2d at 232. Furthermore, the Harrises simply invite us to reweigh the evidence upon appeal. *See Clark*, 726 N.E.2d at 856.

The evidence supporting the trial court's decision indicated that, at the time of the hearing, Rebekah was employed as an assistant manager at a café where, including tips, she could earn up to $600 per week. Her employer testified that she was "a very good employee." Record at 194. Rebekah also had a home, living in a two-bedroom trailer with her boyfriend. Rebekah's mother testified that she stayed with Rebekah during the week and babysat Rebekah's son, C.E., and drove Rebekah to and from work.[8] Rebekah testified that, although she still drank beer, she had stopped using drugs in April 2000.[9] Rebekah also testified that A.S.H. had stated

that she wanted to stay with her mother and brother. Considering this evidence, we cannot say as a matter of law that the Harrises successfully rebutted Rebekah's presumptively superior right with a clear and persuasive showing that Rebekah was presently unfit. *See Froelich*, 745 N.E.2d at 230.

Additionally, although Rebekah did agree to give custody of A.S.H. to the Harrises, and left A.S.H. at the Harrises' home when she moved out in May 1999, Rebekah testified that she attempted to visit and contact A.S.H. Rebekah also testified that it was the Harrises who limited her contact with A.S.H., and that soon after they did so, she petitioned to regain custody. Thus, we cannot say as a matter of law that Rebekah abandoned A.S.H. such that the affections of A.S.H. and the Harrises had become so interwoven that to sever them would seriously mar and endanger the future happiness of the child. *See id.* at 230–31.

We recognize that there was evidence before the trial court which might have supported the Harrises' contention that they rebutted the presumption in favor of Rebekah. However, the issue before us is not whether a different trier of fact could have reasonably reached a conclusion other than that reached by the trial court. "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there will be a basis for reversal." *Turpen v. Turpen*,

---

7. In addition to the evidence recounted above, the hearing also revealed that Rebekah had smoked marijuana while pregnant with A.S.H. In addition, Rebekah had lived with her boyfriend for a short time, and her boyfriend had refused to take a drug test ordered by another court. Rebekah also testified that, in the past, she had smoked marijuana or "had a beer or two" before she picked her children up from daycare. Record at 304.

8. This was necessary because Rebekah's driver's license had been suspended.

9. Rebekah did testify that she had a prescription for the anti-anxiety drug Xanax and that she sometimes exceeded the prescribed dosage and had drunk alcohol the same day she had taken the Xanax, despite warnings not to do so.

537 N.E.2d 537, 539 (Ind.Ct.App.1989). Here, the evidence does not positively require a conclusion different from that reached by the trial court.

 Separately, Rebekah requests that she be granted damages pursuant to former Ind.Appellate Rule 15(G).[10] Rule 15(G) provides this court with the discretionary authority to award damages in favor of the appellee if the judgment is affirmed. See also *Guzzo v. Goodrich Quality Theaters, Inc.*, 679 N.E.2d 166, 169 (Ind.Ct.App.1997), *trans. denied.* However, we must use extreme restraint when exercising this discretionary power due to the potentially chilling effect upon the exercise of the right to appeal. *Id.* To avoid chilling an attorney's pursuit of novel theories or remedies, such damages should be awarded only when the contentions upon appeal are utterly devoid of all plausibility. *Id.* The Harrises' arguments are not utterly devoid of all plausibility, and we decline Rebekah's request for damages.

The decision of the trial court is affirmed.

FRIEDLANDER, J., and RILEY, J., concur.

---

**10.** As this appeal was initiated before January 1, 2001, it is governed by the former Indiana Rules of Appellate Procedure.