### (June 5, 1968)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. NORMAN HORTON, Appellant.— *Per Curiam.* Appeal from an order of the Supreme Court at Special Term which denied, after a *Huntley* hearing, an application in the nature of a writ of error *coram nobis* to vacate a judgment rendered January 26, 1954, convicting defendant of the murder of his father. The facts of the crime are outlined in detail in the report of the affirmance by the Court of Appeals. (308 N. Y. 1.) In the course of the investigation, defendant, upon his own consent and with that of his mother, was admitted to Binghamton State Hospital for the express purpose of submitting to questioning under the influence of sodium amytal, to which he specifically consented, although knowing that he was a prime suspect; all this according to the testimony adduced by the prosecution, as to which there was no contradiction at the trial and little or none upon the subsequent *Huntley* hearing. On neither of the two so-called sodium amytal tests administered did defendant make any incriminating statements but he was amnesiac as to the second test and, fearing that he had made admissions, although in fact he had not, he sought out another patient, one Barrows, for advice and in the course of their discussion confessed his guilt. These statements became known as the Barrows confession and were received on the trial without objection. Meanwhile, Barrows recounted defendant's statements to hospital authorities. Meanwhile, too, defendant communicated with the lawyer who customarily represented his family, and told him that he could no longer maintain his innocence; following which, in the presence, among others, of this attorney, of the attorney who later defended him upon his trial, and of an Assistant District Attorney, he gave a detailed confession which was transcribed and signed. The central theory of defendant's application is that his physiological and psychological reactions to the sodium amytal were such as to induce fear and to compel his disclosures to Barrows and the others. The record did not, by any means, constrain Special Term to this conclusion; but, in any event, if his self-commitment to the hospital, and his express consent to undergo sodium amytal tests for the purpose of eliciting the truth, were in all respects voluntary, the effect and results of the tests would have to be found within the intent and contemplation of his consent. Although statements made under the influence of drugs are, of course, inadmissible, the use of drugs as an investigative tool is not unusual. (See Dession, Freedman, Donnelly and Redlich, Drug-Indured Revelation and Criminal Investigation, 62 Yale L. J. 315, 317; Testing of the Unconscious in Criminal Cases, 69 Harv. L. Rev. 683; An Analysis of the Limited Legal Value of Truth Serum, 11 Syracuse L. Rev. 64; Muehlberger, Interrogation under Drug Influence, 42 J. Crim. L., C.&P.S. 513, 525.) There seems little difference between the use of drugs as a possible prompter and that of the so-called lie detector, which has, of course, triggered confessions found valid, if voluntary. (See, e.g., *Tyler* v.

*United States,* 193 F. 2d 24, cert. den. 343 U. S. 908; *Commonwealth* v. *Hipple,* 333 Pa. 33.) Thus, if there was voluntary consent to the tests, the court would have to find untenable any argument that the tests triggered the Barrows confession and the subsequent written confession, so that they became fruit of the poisonous tree. It is only when submission to such investigative aids as drugs or the polygraph is involuntary that the fruit of the poisonous tree doctrine is applied. (62 Yale L. J. 315, 334, 335, *supra.*) While the confessions may have been triggered by the tests, the tests, if consented to, were not " poisonous " in the first instance and never became so. The claim that defendant's consent to be tested was coerced and involuntary rests solely upon inferences which Special Term was warranted in rejecting, while at the same time crediting the testimony of the Assistant District Attorney to the contrary and properly finding it conclusive. There was, in sum, ample evidence that defendant intelligently consented to his commitment to Binghamton State Hospital for the express purpose of undergoing the so-called sodium amytal tests. The Barrows confession was received on the trial without objection; was not alluded to in the charge; under ordinary circumstances would lie without the ambit of the *Huntley* rule (and cf. *People* v. *Gunner,* 15 N Y 2d 226, 231, with respect to statements to aircraft stewardess) ; and, indeed, has not been previously attacked. The Special Term received all the proof tendered concerning it " as part of the ' totality of circumstances ' " surrounding this inculpatory statement and the confession subsequently given and signed; and we perceive no basis for disturbing Special Term's determination that the People had established beyond a reasonable doubt that each was freely and voluntarily given. We find insubstantial, at least under the circumstances of this case, defendant's objection to the refusal of Special Term to issue a blanket subpoena duces tecum to require the production of all records of the Binghamton State Hospital relating to the admission and treatment of the witness Barrows. (See *Matter of Coddington,* 307 N. Y. 181; *Taig* v. *State of New York,* 15 Misc 2d 1098, affd. 19 A D 2d 182; *Boykin* v. *State of New York,* 13 Misc 2d 1037, 1039, affd. 7 A D 2d 819.) The Special Term Justice suggested an appeal at that time from the intermediate order of denial; expressed readiness to require the production of all records not involving the physician-patient relationship; and suggested the further possibility of a waiver of the privilege by Barrows, who testified at length, almost two months later; but, so far as appears, defendant's counsel, the Public Defender, pursued none of these courses, did not renew his request during or after his examination of Barrows and only now presses and argues his point. Order affirmed. Gibson, P. J., Herlihy, Reynolds, Aulisi and Gabrielli, JJ., concur in memorandum *Per Curiam,* Herlihy, J., in a separate memorandum. Herlihy, J. (concurring). That albeit there is some question as to the voluntariness of the confessions, at the *Huntley* hearing the court found that they were properly admitted and the rights of the defendant were not violated. It also appears from a reading of the brief of the defendant in the Court of Appeals (see 308 N. Y. 1) that the issue of voluntariness was raised in that court. While there is some dispute as to the proper use of drugs, the length of protective police custody, testimony of a possible informant and what at first blush appears to be a threat of coercion, a reading of the record as a whole and the subsequent *Huntley* hearing establishes that the infant defendant's rights were sufficiently protected so that the judgment of conviction should stand. The defendant's conviction was affirmed by the Court of Appeals in December, 1954 and what the court recently said with reference to " reopening old convictions" seems to be applicable to the present situation. (See *People* v. *Todzia,* 21 N Y 2d 338, 352.)