**UNITED STATES of America ex rel. Norman HORTON, Petitioner,**

v.

**Vincent R. MANCUSI, as Superintendent of Attica Correctional Facility, Respondent.**

No. Civ. 1971–171.

United States District Court, W. D. New York.

Oct. 10, 1973.

Henrietta M. Wolfgang, The Legal Aid Bureau of Buffalo, Inc., Buffalo, N. Y. (Daniel J. Weinstein, Buffalo, N. Y., of counsel), for petitioner.

Louis J. Lefkowitz, Atty. Gen., of the State of New York (Bedros Odian, Buffalo, N. Y., of counsel), for respondent.

CURTIN, District Judge.

This petition for a writ of habeas corpus presents a question relating to the duty of the government to disclose evidence to the defendant in a criminal trial.

In 1954 in Chemung County Court, petitioner Norman Horton was convicted of murder in the first degree and sentenced to death, a sentence later commuted to life imprisonment. In 1967, after the decisions in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 294 N.E.2d 179 (1965), a hearing was held in Chemung County Court to determine the voluntariness of two confessions used against petitioner at his trial. The court found the confessions to be voluntary, a determination upheld on appeal, People v. Horton, 30 A.D.2d 709, 290 N.Y.S.2d 767 (3d Dept. 1968), cert. denied, 394 U.S. 991, 89 S.Ct. 1478, 22 L.Ed.2d 765 (1969), and on application to this court for a writ of habeas corpus. United States ex rel. Horton v. Mancusi, Civil No. 1969–282 (W.D.N.Y., Nov. 19, 1969). In 1969 petitioner returned to the Chemung County Court, seeking a writ of *error coram nobis* on the ground that testimony given at the 1967 hearing constituted newly discovered evidence showing he had been deprived of his right to due process of law at his trial. The application was denied without a

hearing, the denial was affirmed, People v. Horton, 35 A.D.2d 784, 315 N.Y.S.2d 613 (3d Dept. 1970), and leave to appeal to the Court of Appeals was denied.

Petitioner's claim arises out of the following facts. On May 24, 1955 petitioner's father was stabbed to death while he slept. For several days thereafter petitioner was questioned by law enforcement officials, although he denied involvement in the crime. Subsequently petitioner voluntarily entered the Binghamton State Hospital for the purpose of taking "truth serum" to satisfy officials that he had not committed the crime. After maintaining his innocence on two occasions, while under the influence of the "truth serum", petitioner revealed his guilt to one Mathias Barrows, a fellow patient. Barrows reported the confession to the police and was enlisted to aid them in obtaining more facts from petitioner.

Barrows testified at trial about petitioner's confession. Although he stated on direct examination that he had been on parole at the time he entered the hospital and had gone there on the recommendation of his parole officer, he was not asked on cross-examination whether he had received any promises or other inducements for his cooperation at the hospital and for his testimony at trial.

At the 1967 hearing Barrows was questioned about the circumstances surrounding petitioner's confession. During his direct examination, the following colloquy occurred:

Q. You eventually testified at the trial of Mr. Horton?

A. Yes sir, I did.

Q. Relative to the conversation you had at the State Hospital?

A. Yes sir.

Q. Did you ever have any conversation with Mr. Cramer [the District Attorney]?

A. Yes sir, before and after.

Q. What was that about?

A. Well we had our conversation, of course, about what I was going to testify and they gave me my statement.

Q. Did you read it over?

A. I read it over to refresh my memory.

Q. Did Mr. Cramer say anything else to you at that time?

A. Yes sir.

Q. What did he tell you?

A. I was on parole and I had five and a half years to go and Mr. Cramer did say to me that it would help my parole by testifying here.

Q. What was the ultimate outcome of your parole?

A. It was dropped. I had five years left.

Q. And it was terminated?

A. Yes sir.

Q. This was before you testified?

A. Yes sir.

Q. Where did that conversation with Mr. Cramer occur?

A. In his office.

Q. Was there anybody else present?

A. There was someone else there but I don't recall who it was. Yes sir I do, it was a State Policeman assigned to me while I was here. I don't recall his name.

On cross-examination, the following dialogue took place:

Q. You went into the State Hospital at the suggestion of your parole officer, is that right?

A. Yes.

Q. Before you went into the State Hospital at his suggestion, did he ever discuss the name Norman Horton with you?

A. No, sir.

Q. Before you went into the State Hospital had you ever heard of Norman Horton?

A. No.

Q. Before you went into the State Hospital did the State Police ever discuss Norman Horton with you?

A. No, sir.

Q. Before you went into the State Hospital did anybody from the Chemung County District Attorney's Office discuss Norman Horton with you?

A. No one.

Q. Before you went into the State Hospital did you discuss with anyone the question of Ray Horton's death?

A. No, sir. I never heard of these people before.

Q. You didn't even know Norman Horton's father had been killed?

A. I didn't know there was a Ray Horton.

Q. The first you knew anything about this was after you met Norman at the hospital?

A. That's right.

Q. You weren't sent there with any promise of a quick parole?

A. No, sir.

In the New York State courts, *see* N.Y.Crim.Proc. Law § 440.10(1)(g) (McKinney 1971), as well as in federal courts, *see* Fed.R.Crim.P. 33, a conviction may be overturned on the ground of newly discovered evidence. In order to merit such relief, the evidence (1) must have been discovered after trial, (2) must be material to the factual issues at the trial and not merely cumulative or impeaching and (3) must be of such a character that it would probably produce a different verdict in the event of a retrial. United States v. Kahn, 472 F.2d 272, 287 (2d Cir. 1973); People v. Eng Hing and Lee Dock, 212 N.Y. 373, 386, 106 N.E. 96 (1914).

Where the newly discovered evidence was known to the government at the time of trial but not disclosed, however,

an issue of constitutional dimensions is presented, and these strict standards do not apply. The fact that the evidence is impeaching in nature will not necessarily bar relief, *see* Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); United States v. Kahn, 472 F.2d 272, 287 (2d Cir. 1973), for the test of materiality of the evidence to the verdict is relaxed as follows:

> If it can be shown that the government deliberately suppressed the evidence, a new trial is warranted if the evidence is merely material or favorable to the defense . . . . The same rule applies, even in the absence of intentional suppression, if it appears that the high value of the undisclosed evidence could not have escaped the prosecutor's attention . . In each of these instances, the materiality of the evidence to the defendant is measured by the effect of its suppression upon preparation for trial, rather than its predicted effect on the jury's verdict . . . .

> If the government's nondisclosure is merely inadvertent, and does not involve evidence whose high value to the defense could not have escaped notice, however, a somewhat stronger burden is put on the defendant. While the movant is still not required to show the probability of a different verdict upon retrial, setting aside a conviction is only called for when there is "a significant chance that this added item, developed by skilled counsel as it would have been could have induced a reasonable doubt in the minds of enough jurors to avoid a conviction."

Applying these principles, petitioner's conviction need not be overturned however one describes the suppression of the fact that Barrows had been promised assistance in obtaining a termination of his parole if he aided the prosecution.[1]

---

1. It is difficult to characterize the nondisclosure. Although the promise was made by the same District Attorney who tried the case, petitioner's counsel, by not asking Barrows whether any promises had been made to induce his testimony, did not create a situation in which a negative response would necessarily cause the District Attorney to remember his promise. Compare Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed. 2d 1217 (1959).

Petitioner was confronted at trial not only with the confession given to Barrows but also with the one given later in the presence of one of his attorneys. This strategy was not to challenge the truthfulness of the confessions but to present the defense that he was insane at the time he committed the crime with which he was charged. Consequently, knowing of the promise to Barrows would not have affected his preparation for trial. Furthermore, because the accuracy of the confession made to Barrows was not an issue at trial and petitioner did not attempt to undermine his credibility, there is no chance that the fact of the promise could have been used to avoid a conviction.

Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), cited by petitioner, is distinguishable. Like the instant case, Giglio involved nondisclosure of a promise to a witness if he testified for the government. Unlike the instant case, however, the non-disclosure "could . . . in any reasonable likelihood have affected the judgment of the jury . . .," Napue v. Illinois, 360 U.S. 264, 271, 79 S.Ct. 1173, 1178, 3 L.Ed.2d 1217 (1959), as is indicated by the following passage from *Giglio*:

> Here the Government's case depended almost entirely on [the witness'] testimony; without it there could have been no indictment and no evidence to carry the case to the jury. [The witness'] credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it. 405 U.S. at 154–155, 92 S.Ct. at 766.

The petition for a writ of habeas corpus is denied.

Certificate of probable cause and permission to appeal in forma pauperis are granted. Petitioner may file a notice of appeal with the Clerk of the United States District Court, United States Court House, Buffalo, New York, without the payment of filing fees.

So ordered.