IN RE: WARDSHIP OF DEANNA JEAN COLLAR: DARLENE COLLAR v. ALLEN COUNTY DEPARTMENT OF PUBLIC WELFARE.

[No. 3-1072A75. Filed April 3, 1973. Rehearing denied May 9, 1973. Transfer denied September 10, 1973.]

*Stanley L. Rosenblatt, Hugo E. Martz,* of Fort Wayne, for appellant.

*Robert H. Berning, Ralph R. Blume, Philip H. Larmore, Adair, Perry, Beers, McAlister & Mallers,* of Fort Wayne, for appellee.

HOFFMAN, C.J.—The sole issue presented by this appeal is whether the order of the trial court making a child a permanent ward of the County Department of Public Welfare is contrary to law.

On September 17, 1971, the County Department of Public Welfare (Welfare Department) filed a petition alleging, *inter alia,* Deanna Jean Collar to be a neglected and dependent child. A hearing was conducted on such petition and Deanna Jean Collar was found to be a dependent child and was made a temporary ward of the Welfare Department.

On January 26, 1972, Mrs. Darlene Collar, the natural mother of the child, filed a petition to terminate the temporary wardship. The trial court ordered the child to remain the ward of the Welfare Department pending further filing and hearing.

On February 4, 1972, the Welfare Department petitioned the trial court to have the child made a ward for adoption purposes. The cause was submitted for hearing on the petition of the Welfare Department and the petition of Mrs. Collar to terminate the temporary wardship. The child was ordered to remain a ward of the Welfare Department in foster placement until further order of the court.

On May 11, 1972, Mrs. Collar petitioned the court to have regular visitation rights established; and on May 12, 1972, filed her motion to dismiss the action pending to have the child made a permanent ward. The record before us contains testimony adduced at the May 12, 1972, hearing in support of the petition for visitation. Such testimony reveals that Mrs. Collar last visited the child in April of 1971. There was also testimony of the Welfare Department caseworker and the child's pediatrician that it would not be in the best interests of the child for her to be returned to her natural mother.

The motion to dismiss was sustained, and the petition for visitation was granted by the trial court and Mrs. Collar was given weekly visitation from ten o'clock A.M. until twelve noon every Saturday.

On June 15, 1972, the Welfare Department filed an amended petition to have the child made a permanent ward for all purposes including adoption. The record before us also con-

tains the testimony adduced at the June 23, 1972, hearing in support of the amended petition of the Welfare Department. Such testimony shows that after the May 12, 1972, order for weekly visitation by the natural mother, no visitation was made until Saturday, May 20, 1972. Following that visitation the child did not eat normally until the following Tuesday. On the following Saturday, May 27, the child ran away and hid prior to the visitation period. The following Saturday, the mother did not call or visit the child. The next Saturday, June 10, the visit of Mrs. Collar only lasted for about three minutes, and the next week Mrs. Collar failed to call or visit at all. There was testimony that the child was different than she was before the visitation started—not as responsive, not capable or happy, completely disorganized and very apprehensive.

The trial court ordered that the child be committed to the care, custody and control and made a permanent ward of the County Department of Public Welfare of Allen County for all purposes including adoption. The motion to correct errors filed by Mrs. Collar was overruled and this appeal followed.

On appeal, appellant contends that the order of the trial court making the child a permanent ward of the Welfare Department was contrary to law because no evidence was presented at the last hearing that the child would have been neglected or dependent had she been under the care and control of the natural mother. In support of such contention appellant cites several cases from other jurisdictions. See e.g., In re Burkhart (1968), 15 Ohio Misc. 170, 239 N.E.2d 772.

The cases cited by appellant from other jurisdictions do not persuade this court. This appeal is controlled by the statutes of Indiana. IC 1971, 31-5-7-7, Ind. Ann. Stat. § 9-3207 (Burns 1972 Cum. Supp.), provides, in pertinent part, as follows:

"Jurisdiction—How obtained.—When jurisdiction shall have been obtained by the 'court' in the case of any child, such child shall continue under the jurisdiction of the court until he becomes twenty-one [21] years of age unless dis-

charged prior thereto or is committed to a correctional or other state institution. A person subject to the jurisdiction of the juvenile court under this act may be brought before it by either of the following means and no other:

(a) By petition praying that the person be adjudged delinquent or dependent or neglected; * * *."

IC 1971, 31-5-7-15, Ind. Ann. Stat. § 9-3215 (Burns 1972 Cum. Supp.), provides, in pertinent part, as follows:

"Hearing and judgment.—The court may conduct the hearing in an informal manner, and may adjourn the hearing from time to time.

* * *

"If the court shall find that the child comes within the provisions of this act [§§ 9-3201—9-3225], it may by order duly entered, proceed as follows:

* * *

(3) The court may make such child a ward of the court, a ward of the department of public welfare of the county, or a ward of any licensed child placing agency in the state willing to receive such wardship;

* * *

(5) Make such further disposition as may be deemed to be to the best interests of the child, except as herein otherwise provided."

In the instant case the jurisdiction of the child was obtained by the trial court by the petition of the Welfare Department seeking to have the child declared dependent and neglected. Section 9-3207, *supra*. The trial court found the child to be a dependent child. At that time the parental rights of the natural mother to control and have custody of the child were terminated by the order of temporary wardship. Having once found the child to be a "dependent child" the trial court was guided by the best interests of the child. Section 9-3215, *supra*.

In *Duckworth* v. *Duckworth* (1932), 203 Ind. 276, at 285-286, 179 N.E. 773, at 776, it is stated:

" '[W]hen once out from under the custody and control of the parent, that the welfare of the child is to be regarded

as the paramount consideration, and the courts will withhold from the father such custody and control, once he is voluntarily or involuntarily deprived of it, if the good and welfare of the child demand it.' *Luellen* v. *Younger, supra.* [(1924), 194 Ind. 411, 417-418, 143 N.E. 163, 164.]

"The burden of proof is upon the parent seeking to regain custody of the child to show the change in conditions, his reformation and that the best interests of the child would be served by giving him the custody."

While *Duckworth* is factually distinguishable from the instant case, the above quoted language is applicable.

Once the child is found to be a "dependent child," and the parental relationship is severed, the change of the state of mind, habits, and circumstances of the parent essential to provide a fit home for the child is a matter solely up to the parent. The burden of going forward with the evidence should be, and is, upon the parent to show such a change of conditions and reformation that the best interests of the child would be served by returning the child to the parent.

In the instant case the trial court heard and saw the witnesses and observed their demeanor. The evidence in the record before us supports the order of permanent wardship.

The judgment of the trial court is affirmed.

Affirmed.

Sharp and Staton, JJ., concur.