485 N.E.2d 139 (1985)
In the matter of the Termination of the Parent-Child Relationship of D.L.W., Child, and Angela Woods, Mother, and Charles Mayes, Father.
No. 1-185A12.
Court of Appeals of Indiana, First District.
November 21, 1985.
*140 Charles Gregory Read, Office of Public Defender, Jeffersonville, for appellant.
David A. Lewis, Jeffersonville, for appellee.
NEAL, Judge.

STATEMENT OF THE CASE
Respondent-appellant, Angela Woods (Angela), appeals from a judgment of the Clark Superior Court No. 1 terminating her parental rights as the natural mother of D.L.W., a minor child.
We affirm.

STATEMENT OF THE FACTS
After D.L.W. began attending Spring Hill Elementary School in the fall of 1980, it became apparent to school officials that the five year old child was suffering from significant educational, behavioral and speech development problems. In fact her disabilities were of such a nature that she was placed in the school's "special education" program. In addition, she often appeared underfed and exhibited evidence of possible physical abuse and neglect and sexual abuse. After contacting the Clark County Department of Public Welfare (DPW), school officials, along with a DPW caseworker, met with Angela to discuss the child's various problems and the detrimental conditions under which the child was living.
During their meeting the officials discovered that Angela had been "street running" for the past 10 or 12 years and that she had given birth to five children: two that died in infancy; one that had been put up for adoption; one that was living with friends; and D.L.W., who lived wherever Angela happened to be staying. They also discovered that Angela was unemployed, had no permanent housing arrangement and had at least one previous arrest in the *141 past two years. Despite admitting that she could not properly care for D.L.W., the officials believed that Angela was sincere in her resolve to improve the situation. After discussing the possible need for foster care, the officials set goals for Angela to meet to improve D.L.W.'s situation. These goals included completion of her high school diploma, obtaining employment, becoming independent, maintaining her own place of residence, receiving counseling, and spending time with D.L.W. on a daily basis.
By the end of January, 1981, Angela was back in jail. It was during this particular stay at the Indiana Women's Prison that she signed the written consent to wardship. At the age of six years, D.L.W. was placed in a foster home.
Despite having received correspondence while in prison from the DPW requesting her to contact them upon her release, Angela failed to do so until five months after her incarceration ended. After meeting with her DPW caseworker in December of 1981, and setting the same goals and objectives as had been set in the fall of 1980, she was referred to the Indiana Vocational Rehabilitation Center. The referral was unsuccessful as Angela never maintained a permanent address where she could be contacted. Not knowing where Angela was living, the caseworker could not provide services to help Angela meet her goals. By February 1982, Angela had been arrested again. She remained in prison until September 1982.
On October 14, 1982, the court authorized the DPW to file a petition to terminate the parent-child relationship. After the petition filing was authorized, Angela began attending vocational rehabilitation, attending counseling and displaying an apparent sincere desire to change her situation in such a manner as to enable her to regain custody of D.L.W. Because of the apparent change in motivation and attitude the DPW requested the court to delay the parental rights termination hearing.
The court issued an order on April 8, 1983, which read in pertinent parts as follows:
"1. The matter of the termination of the parent-child relationship shall be held in abeyance until the end of 1983.
2. A.W. shall receive vocational rehabilitation training at the Southeastern Indiana Vocational Rehabilitation Center.
3. A.W. shall receive counseling at the Southern Indiana Mental Health Guidance Center.
4. A.W. shall complete her G.E.D. and shall receive a high school diploma.
5. A.W. shall attend parent effectiveness training.
6. A.W. shall secure adequate housing for herself and her child.
7. A.W. shall secure sufficient income to provide for her care and for the care of her child.
8. All conditions of this order shall be fulfilled by A.W. on or before December 31, 1983.
9. The success or failure of A.W. to fulfill the requirements of this order shall be set forth in a written report by the Clark County Department of Public Welfare and submitted to the Court during the early part of 1984.
10. If the report of the Clark County Department of Public Welfare indicates that the mother, A.W., has failed to meet the requirements of this order, the Court shall schedule a hearing on the department's petition to terminate parental rights."
Angela failed to complete the requirements of the April 8, 1983, order. Although her failure to obtain employment was due in part to a disabling hand operation, the operation should not have been an excuse for her failure to adequately work towards the other goals. In addition, her failure to attend over one-half of the physical therapy sessions intended to rehabilitate her hand, is further evidence of a lackadaisical attitude toward meeting her *142 goals and objectives, which was her only avenue to regain custody of D.L.W. As a result, the DPW on March 29, 1984, submitted its written report regarding her failure to meet the court ordered goals along with a motion to schedule a final parental rights termination hearing.
The final hearing was subsequently conducted on September 21, 1984. During that hearing the above facts were established. In addition it was determined that since the April 8, 1983 pre-trial conference Angela had obtained employment and had secured her own apartment. Angela reiterated her intent to complete the previously set goals and contended that she could and would adequately provide for herself and D.L.W. In fact one witness, a mental health therapist who was involved with Angela's "goal setting" program, testified that she believed Angela, as of that date, had attained a majority of the goals that were set out for her. However, Angela's previous and current DPW caseworkers disagreed with that assessment and recommended termination of her parental right.
On October 8, 1984, the Clark Superior Court No. 1 terminated Angela's parental rights regarding her child, D.L.W.

ISSUES
Angela contends that the following findings of the trial court were not supported by sufficient evidence:
I. That there is a reasonable probability that the conditions which resulted in the child's removal from her parent will not be remedied.
II. That termination of the parent-child relationship is in the best interest of the child.
III. That the DPW has a satisfactory plan for the care and treatment of the child.

DISCUSSION AND DECISION
Before parental rights may be involuntarily terminated, the following must be supported by clear and convincing evidence:
"(1) the child has been removed from the parent for at least six (6) months under a dispositional decree;
(2) there is a reasonable probability that the conditions that resulted in the child's removal will not be remedied;
(3) termination is in the best interests of the child; and
(4) the county department has a satisfactory plan for the care and treatment of the child."
IND. CODE 31-6-5-4; J.K.C. v. Fountain County Department of Public Welfare (1984), Ind. App., 470 N.E.2d 88. In determining whether the trial court's decision to terminate one's parental rights was supported by clear and convincing evidence, we may not reweigh the evidence or judge the credibility of the witnesses; we may only consider that evidence most favorable to the judgment. Matter of Lozier (1983), Ind. App., 453 N.E.2d 345.

Issue I.
Angela first contends that the evidence presented at trial was insufficient to support a finding that a reasonable probability existed that the conditions resulting in the child's removal will not be remedied. Angela is correct in stating that the trial court should assess a parent's ability to care for his child as of the date of the termination proceeding, in light of any changed circumstances. Wardship of Bender (1976), 170 Ind. App. 274, 352 N.E.2d 797. However, the court must also examine the parent's pattern of conduct regarding the care of his children. Matter of Pickins (1976), 170 Ind. App. 171, 352 N.E.2d 502.
It is true that between the pre-trial conference on March 29, 1984, and the final termination hearing on October 8, 1984, Angela had made gains toward meeting the goals that the court had required to be met by December 31, 1983, i.e. she had secured both a job and an apartment of her own, and was periodically attending her counseling and parent effectiveness sessions. Such turn arounds in Angela's attitude and behavior have occurred in the past. Unfortunately, *143 such "improvements" have just happened to coincide with similar immediate threats to her rights as a parent and have tended to last only as long as the threat is perceived as immediate. As the facts set out above illustrate, this scenario has occurred on no less than three previous occasions. It is difficult to argue with the DPW that this behavior pattern is typical and will occur again and again. Angela asks for a second chance. She has had at least three "second chances" over the last five years while D.L.W. has waited. D.L.W. should not be made to wait any longer.
Given Angela's unfortunate reoccurring behavior pattern, the DPW has established sufficiently clear and convincing evidence from which the trial court could have found that there is no reasonable probability that the circumstances which led to D.L.W.'s removal will be remedied.

Issue II.
Angela next contends that there was insufficient evidence to support a finding that it was in D.L.W.'s best interest to terminate Angela's parental rights. As we stated in J.K.C., supra, at 93:
"In making the `best interest of the children' determination the trial court is required to look beyond factors identified by the DPW to the totality of the evidence. Children are not removed from the custody of their parents because there is a better place for them, but because the situation while in the custody of their parents is `wholly inadequate for their very survival'. There is a graduated yardstick according to which the particulars of a case must be measured. In so doing, the trial court must subordinate the interests of the parents to those of the children involved." (Citations omitted.)
D.L.W. was five years old when the DPW first became actively involved in the case. She was suffering from significant educational, behavioral and speech development problems. She also exhibited signs of possible physical abuse and neglect and sexual abuse. Over the last five years D.L.W. has waited while her mother supposedly tried to improve her own condition in order that she could regain custody of D.L.W. During that five year period Angela has been in and out of prison numerous times, has admittedly been "running the streets" and has repeatedly failed to achieve basic objectives established by herself and the DPW. D.L.W. is now ten years old. She has significant developmental problems and has led a life of instability.
The DPW has presented sufficiently clear and convincing evidence that termination of Angela's parental rights is in D.L.W.'s best interest.

Issue III.
Finally, Angela contends that insufficient evidence was presented to support a finding that the DPW had a satisfactory plan for the care and treatment of D.L.W. The evidence shows that the DPW plans to keep D.L.W. in her present foster home until she can be permanently adopted. Thus the DPW will provide for her food, shelter, clothing and medical and dental care until adoptive placement can be made. IND. CODE 31-6-5-4(4) does not require the DPW to "completely detail the [child's] future." J.K.C., supra, at 93. Rather, the DPW need only outline the general direction that its plans are to take. Matter of Miedl (1981), Ind., 425 N.E.2d 137. The DPW has sufficiently outlined its plans, thus meeting its burden of proof.
For the above stated reasons, this cause is affirmed.
Judgment affirmed.
RATLIFF, P.J., and ROBERTSON, J., concur.